State v. Williams and State v. Perry

———————

STATE OF NORTH CAROLINA v. CLARENCE LEE WILLIAMS AND STATE OF NORTH CAROLINA v. CLARENCE PERRY

No. 846SC668

(Filed 7 May 1985)

1. Criminal Law § 99.2— court's clarification of testimony—no expression of opinion

The trial court did not express an opinion on the evidence in clarifying a witness's testimony by stating, "One man had marijuana on him that was in there. I think that's what he said."

2. Criminal Law § 102.4— comment by prosecutor not improper

The prosecutor's comment to the trial court in support of his motion to strike a defense witness's testimony after the witness asserted his privilege against self-incrimination did not improperly convey to the jury that the witness was guilty of drug crimes for which he had not been tried.

3. Criminal Law § 87.4— new matter on redirect examination

Even if an officer's testimony on redirect examination concerning the chain of custody of marijuana was "new matter," the trial court did not abuse its discretion in allowing the testimony since it could have been properly admitted on direct examination.

**4. Criminal Law § 86.3— denial of conviction—further sifting of witness—specific acts of misconduct**

When a defense witness denied on cross-examination that he had been convicted of communicating a threat to his seventy-three-year-old mother, the trial court did not abuse its discretion in permitting the prosecutor to "sift the witness" by asking further questions about specific acts of misconduct during the witness's alleged attack on his mother.

**5. Criminal Law § 86.4— impeachment—specific acts of misconduct—bias or interest—improper question about arrest not prejudicial**

The State was properly permitted to impeach a defense witness by cross-examining him about specific acts of misconduct and about his bias or interest in the litigation. However, a question as to whether the witness was on bond after his arrest for a cocaine sale was improper, but defendant was not prejudiced by the question where the trial court sustained defendant's objection thereto and the witness had already volunteered that the specific acts of misconduct being referred to were "things I am accused of, not convicted of."

APPEAL by defendants from *Reid, Judge.* Judgments entered 18 January 1984 in Superior Court, HALIFAX County. Heard in the Court of Appeals 13 February 1985.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Hux, Livermon & Armstrong by James S. Livermon, Jr., for defendant appellants.*

COZORT, Judge.

The defendants, father and son, operated "Nooney's Pool Hall" in Scotland Neck, North Carolina. As a result of an undercover operation conducted by the Halifax Alcohol Beverage Control Board, they were indicted and later convicted of various drug offenses. Their assignments of error on appeal concern allegedly prejudicial comments made by the trial judge and the prosecution and the scope of cross-examination and redirect examination afforded the State in its questioning of various witnesses. Our review of the record reveals no prejudicial error.

At trial, the State's principal witness was Clarence Cox, Jr., an officer with the Winston-Salem Alcohol Beverage Control Board. In August of 1983, Cox was sent to assist the Halifax ABC Board in an undercover drug and alcohol operation.

On 6 August 1983, Cox went to "Nooney's" and saw the defendant Williams, known as Nooney, playing cards at a pool table in the back of the pool hall. Cox observed several black males approach Nooney and ask to purchase "some nickel bags" of marijuana. Nooney told one of his sons to go get his other son, the defendant, Perry, from the arcade to handle the sales. When Perry returned to the pool hall, Cox watched Perry exchange money for little brown bags with at least twelve people.

During this time, Cox had entered the card game where Nooney was also playing. As the card game was ending, Cox told Nooney he wanted to purchase two nickel bags and a beer, even though the establishment did not have a liquor license. Nooney replied that his sons had left in his car to retrieve more marijuana for sale and would return shortly. Later, when Perry and his brother returned, Perry gave Nooney two brown envelopes. Nooney then approached Cox and sold him the two brown envelopes, containing marijuana, and a beer. Cox further testified that subsequent to 6 August 1983 he made other beer buys and observed Perry selling other brown envelopes.

The defendants offered evidence, denying the allegations that they sold marijuana or beer at the pool hall. Nooney testified that the beer consumed on the premises was purchased next door at "Joe's Cafe" and that Cox on 6 August 1983 pulled out a bag of marijuana and gave everybody in the card game a joint. Perry also testified that he has never sold marijuana or beer for himself or for his father.

The jury convicted Williams of possession of marijuana with the intent to sell and deliver, the sale and delivery of marijuana, maintaining a place of business for the purpose of selling or delivering controlled substances, and maintaining a motor vehicle for the purpose of selling or delivering controlled substances. Perry was convicted of possession of marijuana with the intent to sell and deliver and the sale and delivery of marijuana.

[1] The defendants' first assignment of error contends that the trial court erred by making improper comments concerning the substance of a witness's testimony. During the cross-examination of Officer Cox by the defendants, the following discourse occurred:

Q. [Defense Counsel]: Will you tell this jury or will you show this jury what marijuana was found when it was raided?

A. If I'm not mistaken there was a party—a black male charged with misdemeanor possession of marijuana.

Q. I didn't. ask you that. I asked you would you show what was found when they tore up the pool tables, went all over the whole premises.

A. I just told you what was found. It was found on a black—

Q. Can you show it to the jury?

A. I don't have it with me.

Q. Do you know where it is?

A. The officer that did the arrest should have it.

Later, Cox testified that when they searched the pool hall, they found empty beer cans and liquor bottles. Defense counsel then added:

Q. But you didn't find any marijuana.

[Prosecutor]: Objection, that's not what he said.

[Defense Counsel]: That's not what he said?

Q. Did you find any marijuana?

THE COURT: One man had marijuana on him that was in there. I think that's what he said.

This clarification by the trial judge did not amount to an improper expression of an opinion. The trial court did not state or imply that the witness's testimony was true or credible evidence. We hold the trial court's restatement of a portion of the witness's testimony for the benefit of trial counsel did not constitute prejudicial error.

[2] The defendants also assert that they were prejudiced by alleged improper comments by the prosecution. On direct examination, defense witness Eddie Wilkins testified that he observed Officer Cox on 6 August 1983 take a bag of marijuana out

of his pocket and told others sitting at the table to roll themselves a joint. This story substantiated the defendants' version of the events on that day. On cross-examination, the State asked Wilkins if he wasn't the person from whom Cox bought cocaine on several occasions. In response to these questions, Wilkins asserted his right against self-incrimination and refused to answer. The State attempted to impeach Wilkins further by showing that Wilkins had an interest in discrediting Cox in this case in the hope that Cox would be discredited in his own case.

The State moved to strike all of Wilkins' testimony on the grounds that it had not been allowed to effectively cross-examine Wilkins by his constant assertion of the Fifth Amendment. The court denied the motion, stating that "[t]he only thing he took the Fifth on were things you [the State] asked him for impeachment purposes," and that "he answered the questions you put to him about the substantive matters." Asking to be heard further on the motion, the prosecution explained:

> Those questions that I asked him about were things that took place when this officer was working. Those had to do with him and this officer at the time that this officer was working, the same thing—
>
> THE COURT: I think it was August the twelfth or sometime after this event that you asked him about.
>
> MR. BEARD: Three occasions, your Honor, October the first, October the twentieth and I believe there was one other occasion. If I may say so, your Honor, I was asking questions that had to do with his relationship with this officer, not about the things that he's done.

Again, we hold that the comments by the prosecution did not amount to prejudicial error. The district attorney did not express an opinion as to the truthfulness of the evidence before the jury. The record further reveals that the defendants did not object to these comments or make a motion for a mistrial. "In order to seek appellate review of conduct of adverse counsel, counsel must object to the conduct at the time of its occurrence." *State v. Mitchell*, 20 N.C. App. 437, 439, 201 S.E. 2d 720, 722 (1974). Because of the defendants' failure to make a timely objection and to demonstrate how they were prejudiced by the prosecutor's remarks, this assignment of error is overruled.

[3] The defendants' three remaining assignments of error deal with the scope of redirect and cross-examinations given to the State by the trial court. In the first instance, the defendants argue that the trial court improperly allowed Officer Cox to testify on redirect examination that the green vegetable matter that he obtained from the defendants was marijuana, and to the chain of custody of that marijuana. Generally, redirect examination cannot be used to repeat direct testimony or to introduce entirely new matter. However, "the trial judge has discretion to permit counsel to introduce relevant evidence which could have been, but was not brought out on direct." *State v. Locklear*, 60 N.C. App. 428, 430, 298 S.E. 2d 766, 767 (1983). The fact that Cox had purchased marijuana from the defendants had been discussed on direct and cross-examination. Even if Cox's testimony with regard to the marijuana's chain of custody was "new matter," we hold the trial court did not abuse his discretion in allowing this testimony since it could have been properly admitted on direct examination. We also find it important to note that the defendants' only objection to the chain of custody line of questioning was that it was repetitious. This assignment of error is overruled.

[4] Secondly, the defendants object to the scope allowed the State in its cross-examination of Benjamin Franklin Doyle. The district attorney asked this defense witness what crimes he had been convicted of. Doyle replied: "Shoplifting . . . [and] [d]riving under the influence." The district attorney then asked whether he had been convicted of communicating a threat to his seventy-three-year-old mother. When Doyle denied such a conviction, the following exchange occurred:

Q. I'll ask you if you weren't convicted of unlawfully, willfully threatening physical injury to your mother, Pauline Doyle, on October the thirteenth, 1981?

A. That was throwed out.

Q. I'll ask you again if you were not convicted of communicating a threat to your mother?

A. Not as I knows of.

Q. I'll ask you if on October thirteenth, 1981, if you didn't knock her — is she crippled?

MR. ROSSER: Objection, Judge, he's answered the question.

MR. BEARD: I'll withdraw that question, your Honor.

Q. I'll ask you if you didn't knock her down on October the thirteenth, 1981, on the bed, knocking her glasses off, and shove her up against the door, Mr. Doyle.

MR. ROSSER: Objection.

THE COURT: Wait just a minute. Is that the same thing that he was convicted of?

MR. BEARD: Your Honor, I have the conviction here, your Honor —

THE COURT: What I'm saying is you can ask him about specific acts —

MR. BEARD: That's exactly what I'm asking about at this time, your Honor. I'm asking him about the specific act on October thirteenth, 1981, if he didn't knock his mother down, knocking her glasses off, and push her up against the door.

THE COURT: Did you do those things?

WITNESS: No, sir.

THE COURT: All right.

On cross-examination, a witness may be impeached with regard to his prior convictions or specific acts of misconduct. "The witness may be asked all sorts of disparaging questions and he may be particularly asked whether he has committed specific criminal acts or has been guilty of specified reprehensible or degrading conduct." *State v. Waddell*, 289 N.C. 19, 26, 220 S.E. 2d 293, 298 (1975), *death penalty vacated*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1210 (1976). The district attorney's question concerning Doyle's alleged attack on his mother was proper for purposes of impeachment through specific acts of misconduct.

The district attorney's persistence on this matter was not improper in light of the witness's evasive responses. The district attorney may "sift the witness" in such situations. The district attorney may phrase his questions emphasizing the specific acts

of misconduct even though the witness has been convicted of offenses resulting from the misconduct. *State v. Herbin,* 298 N.C. 441, 451, 259 S.E. 2d 263, 270 (1979). Thus, as a part of the "sifting" process, the prosecutor could properly use the subject matter of the communicating threats conviction which Doyle had denied as a basis for his question concerning the specific bad act of attacking his mother. "Whether the cross-examination goes too far or is unfair is a matter resting within the sound discretion of the trial judge." *Id.* at 452, 259 S.E. 2d at 270. We hold that the trial judge did not abuse his discretion in this case.

One futher qualification in the area of impeachment through specific acts of misconduct is that the questions regarding the acts must be asked in good faith. *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972). In the present case, the prosecutor's question about the witness's attack on his mother was asked in good faith because the prosecutor had in his possession a copy of Doyle's conviction. Although the district attorney should have been more careful in revealing in front of the jury his basis for the questions, the defendants did not object to his statement. Furthermore, we fail to hold that his remark constituted prejudicial error in view of the trial court's willingness to allow the witness to clarify that he did not commit the acts mentioned by the State.

[5] Similarly, in the final assignment of error the defendants contend that the trial court erred in the scope allowed the district attorney during his cross-examination of defense witness, Eddie Wilkins. In its cross-examination, the State attempted to impeach Wilkins in three respects: (1) that he had committed specific acts of misconduct such as possessing and selling cocaine to Officer Cox; (2) that he had been arrested as a result of his commission of these acts; and (3) that since Officer Cox would be the testifying officer in the case against him, Wilkins had an interest in seeing Cox discredited.

The first and third methods of impeachment were properly allowed by the trial court. As discussed above, Wilkins could be questioned about these specific acts of misconduct. When asked about specific occasions Wilkins had allegedly sold cocaine to Officer Cox, he invoked his right against self-incrimination. The State could also properly cross-examine Wilkins for the purpose

of showing his bias or interest in the litigation. *State v. Miller*, 282 N.C. 633, 642, 194 S.E. 2d 353, 358 (1973).

However, a witness may not be impeached by cross-examination as to whether he has been arrested or accused of an unrelated criminal offense. *State v. Waddell, supra.* As the district attorney was asking Wilkins about an alleged cocaine sale to Cox on 1 October 1983, the prosecutor also added:

> Q. [Y]ou are on bond on this occasion, aren't you?
>
> [Defense Counsel]: Objection.
>
> THE COURT: Sustained.

The defendants made no motion to strike. Because the witness had already volunteered that the specific acts of misconduct being referred to were "things I'm accused of, not convicted of" and because the trial judge properly sustained the defendants' objection, we fail to see how defendants were prejudiced. We hold that the trial court did not abuse its discretion in the latitude it allowed the State in the cross-examination of Wilkins.

As reasoned above, we hold the defendants' trial was free from prejudicial error.

No error.

Chief Judge HEDRICK and Judge JOHNSON concur.