STATE OF NORTH CAROLINA v. ROBERT EUGENE WARD, Defendant

No. 9421SC460

(Filed 4 April 1995)

**1. Evidence and Witnesses § 2542 (NCI4th)— two-year-old sexual victim—competency to testify**

In a prosecution of defendant for the alleged sexual abuse of a two-year-old, the trial court did not err in finding that the victim, who was four years old at the time of trial, was competent to testify and in allowing her to testify even though there were some contradictions in her testimony as to her knowledge of the difference in telling the truth and telling a "story." N.C.G.S. § 8C-1, Rule 601(b).

**Am Jur 2d, Witnesses §§ 218, 219.**

**Competency of young child as witness in civil case. 81 ALR2d 386.**

**Witnesses: child competency statutes. 60 ALR4th 369.**

2. **Evidence and Witnesses § 981 (NCI4th)— young sexual abuse victim—refusal to cooperate—witness unavailable— hearsay testimony admissible**

The trial court in a sexual abuse case did not err in admitting hearsay testimony of witnesses concerning statements that the victim made to them which identified defendant as the person who sexually abused her, since the victim's limited testimony showed that she was neither cooperative nor responsive and was therefore "unavailable" for purposes of testifying at trial; given her unavailability and the evidentiary importance of her statements, the hearsay testimony of the witnesses was "necessary"; and defendant did not dispute that the State established the inherent trustworthiness of the original declaration.

**Am Jur 2d, Evidence §§ 691 et seq.**

3. **Rape and Allied Offenses § 195 (NCI4th)— first-degree sexual offense and rape—submission of attempted offenses not required**

The trial court in a prosecution for first-degree sexual offense and first-degree statutory rape did not err in refusing to instruct the jury on attempted first-degree sexual offense and attempted first-degree rape where the State presented evidence that defendant anally and vaginally penetrated the two-year-old victim; defendant presented evidence that he was not with the victim on the weekend when she was allegedly abused and that the victim's mother actually abused her; and testimony elicited by defendant merely showed that he touched the victim in addition to committing acts sufficient to convict for first-degree sexual offense and first-degree rape.

**Am Jur 2d, Rape §§ 97, 98.**

Appeal by defendant from judgment entered 12 January 1994 by Judge James C. Davis in Forsyth County Superior Court. Heard in the Court of Appeals 31 January 1995.

This case involves the alleged sexual abuse of two year old Crystal Marie Wilson, the daughter of Samantha Wilson and James Lee Wilson, Jr. Samantha and James Wilson, Jr. separated in July 1992 and James Wilson, Jr. moved to the home of his mother, Sandra Wilson. The defendant, Robert Eugene Ward (hereinafter defendant), had also separated from his wife and had lived at Sandra Wilson's

home since January 1990. According to the visitation agreement that Samantha and James Wilson, Jr. had reached, James Wilson, Jr. was to have the couple's children every other weekend, every Monday from 1:30 p.m. to 8:00 p.m., and every other Thursday from 6:00 p.m. to 8:00 p.m. During the weekend of November 6-8, 1992, the infant victim stayed with her father at Sandra Wilson's home. After the victim returned from the weekend with her father, she told her mother that it hurt when she urinated. Samantha Wilson then noticed that her daughter's vaginal area was red and that her panties contained more discharge than normal. Though the victim had previously had urinary tract infections, her mother was concerned and asked her what had happened. The victim responded that defendant "put his bone in her cootie-coo." Samantha Wilson then took the victim to the North Carolina Baptist Hospital Emergency Room where an investigation into possible child sexual abuse began. Defendant was indicted on charges of first degree statutory rape, first degree statutory sexual offense, and taking indecent liberties with a child.

At the trial beginning 10 January 1994, a Dr. Santos testified that she had been a resident in pediatrics at North Carolina Baptist Hospital when the victim was first brought to the hospital on 8 November 1992. Dr. Santos testified that she examined the victim and that her vulva and labia were very red and that "[t]here was a tear or a laceration at the posterior part of the vulva area." Dr. Santos also found that the anal area was very red and that there was a "rectal tag which is an extra piece of skin" outside of the anal area. Dr. Santos testified that the rectal tag could have been congenital or could have resulted from an "irritation" such as penetration. Dr. Santos also testified that she gave the victim anatomical dolls and that with those dolls, the victim had demonstrated how defendant kissed her on the mouth, removed both his and her clothes, and touched her rectum with his finger. The victim told Dr. Santos that defendant put his penis (which the victim orally referred to as his "bone") in her vagina and rectum.

Cindy Stewart, a social worker with the Baptist Hospital Child/Medical Evaluation Team, testified that she interviewed the victim on 12 November 1992 in the pediatric clinic at Baptist Hospital. When the victim entered the room to talk with Ms. Stewart, the victim went directly to the anatomical dolls and began exploring them. The victim identified the vaginal area as the "cootie-coo" and told Ms. Stewart that defendant had hurt her "cootie-coo" and had put his "bone" in her "tail."

Dr. Sarah Hendrix Sinal, associate professor of pediatrics and family medicine at Bowman Gray School of Medicine and a member of the clinical staff at Baptist Hospital, testified as an expert in the field of pediatrics and child sexual abuse. Dr. Sinal testified she had examined the victim on 12 November 1992 and discovered a tear in the victim's anal area which she estimated was less than six weeks old. She testified that in her opinion the victim had been sexually abused.

Joetta Shephard, a social worker and supervisor with Family Services, a non-profit human service agency, testified that she first talked with the victim on 5 January 1993 for purposes of therapy. Ms. Shephard testified that the victim told her that defendant "hurt her cootie" and demonstrated by the use of anatomical dolls how defendant had been on top of her. Ms. Shephard stated that in her opinion, the victim had been sexually abused. Detective Ailene Sims with the Winston-Salem Police Department's Juvenile Unit testified that she interviewed the victim on 9 November 1992. Detective Sims testified that the victim told her that defendant put his "bone" in her.

Defendant then offered evidence. Nancy Ward, defendant's daughter, testified that she had previously accused her father of molesting her, but that she had fabricated the charges, hoping that it would bring her estranged parents closer together. Defendant testified that he had pled "no contest" to the charges brought by his daughter to spare her the trauma of a trial but that he had never molested her. He then testified that he had been living at Sandra Wilson's home but that he had never been alone with the victim and had never sexually abused her in any way.

James Lee Wilson, Sr., Sandra Wilson's husband, testified that defendant was not in his and Sandra Wilson's home during the weekend of November 6-8, 1992 and that defendant moved out in September 1992. After moving out, defendant was never there when the victim was visiting. Ronnie Cranfield, defendant's stepson, testified that defendant was not at Sandra Wilson's home during that weekend because defendant had been with him during much of that time. William Hill, Sr. also testified that defendant was not at Sandra Wilson's home during the November 6-8 weekend because he was with him at a repair shop working on an automobile carburetor. Spurgeon Wood, Jr. and Gene Ward, defendant's adopted son, also testified that defendant was at the repair shop during that weekend.

**STATE v. WARD**

[118 N.C. App. 389 (1995)]

James Wilson, Jr., the victim's father, testified that defendant stopped living in Sandra Wilson's home in September 1992 and thereafter was never there when the victim was visiting at the home. James Wilson, Jr. also testified that while the victim was visiting him after the November 6-8, 1992 weekend, the victim awoke from a nightmare and told him that her mother had stuck her finger in her "cootie-coo" and that defendant did not hurt her. Janet Motsinger, a relative by marriage of Sandra Wilson, and Sandra Wilson also testified that the victim told them that her mother hurt her in her "cootie-coo." Sandra Wilson further testified that she talked to Samantha Wilson in September 1992 and that Samantha Wilson told her that James Wilson, Jr. would never get custody of his children because "there was a convicted child molester living in [Sandra Wilson's] household." Sandra Wilson testified that she then asked defendant to move out of her home because she did not want to hurt her son's chances of gaining custody of his children and because she did not want defendant to be accused of something he had not done.

On 12 January 1994, the jury found defendant guilty of the charges of first degree statutory rape, first degree statutory sexual offense, and taking indecent liberties with a child. The trial court consolidated the three offenses and sentenced defendant to life in prison.

Defendant appeals.

*Nelson Boyles Niblock & Green, by Laurel O. Boyles, for defendant-appellant.*

*Attorney General Michael F. Easley, by Associate Attorney General Carol K. Barnhill, for the State.*

EAGLES, Judge.

I.

[1] Defendant first argues that the trial court erred in finding that the victim was competent to testify and in allowing her to testify. The victim was four years old when she testified and the alleged offenses occurred when she was two years of age. Defendant argues that because of the victim's age and because of her inconsistent answers as to whether she knew what it meant to tell the truth, she was not competent to testify. G.S. 8C-1, Rule 601(b) provides:

(b) *Disqualification of witness in general.*—A person is disqualified to testify as a witness when the court determines that he is

(1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

"There is no age below which one is incompetent, as a matter of law, to testify." *State v. Jenkins*, 83 N.C. App. 616, 621, 351 S.E.2d 299, 302 (1986), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987). Determining whether a child is competent to testify is a matter within the sound discretion of the trial court. *Id.* The trial court's decision will not be reversed on appeal unless it is shown that it could not have been the result of a reasoned decision. *State v. Spaugh*, 321 N.C. 550, 554, 364 S.E.2d 368, 371 (1988), *citing State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987). In exercising his discretion, the trial court "must rely on his personal observation of the child's demeanor and responses to inquiry on *voir dire* examination." *State v. Fearing*, 315 N.C. 167, 174, 337 S.E.2d 551, 555 (1985).

In *Jenkins*, we held that the trial court did not err in finding that a four year old witness was competent to testify even though the witness gave contradictory answers on *voir dire* as to whether she knew the difference between the truth and a lie. *Jenkins* at 621-22, 351 S.E.2d at 302-303. There we stated that "the vast majority of cases in which a child witness' competency has been addressed have resulted in the finding, pursuant to an informal *voir dire* examination of the child before the trial judge, that the child was competent to testify." *Jenkins* at 621, 351 S.E.2d at 302-03. We pointed to *State v. McNeely*, 314 N.C. 451, 454-57, 333 S.E.2d 738, 741-42 (1985), where our Supreme Court upheld the trial court's finding of competency even though the child witness responded that she did not know what it meant to tell the truth. *Jenkins* at 621-22, 351 S.E.2d at 303. We also referred to *State v. Jones*, 310 N.C. 716, 722, 314 S.E.2d 529, 533 (1984), where our Supreme Court "cited as evidence of competency that the child knew that if she did not tell the truth she would get a spanking." *Jenkins* at 622, 351 S.E.2d at 303.

Here, relevant portions of the conversation between counsel for the State and the victim were:

Q. Crystal, do you know what it means to tell the truth?

A. (Witness nods head affirmatively.)

Q. You do? What happens to you at home if you don't tell the truth?

**STATE v. WARD**

[118 N.C. App. 389 (1995)]

A. A whipping.

Q. And does that hurt when you get a whipping?

A. Yes.

Q. Once you get a whipping, what do you know you're supposed to do after that? Do you know?

A. (Witness shakes head negatively.)

Q. But you know you get a whipping when you tell a story. Is that right?

A. Yes.

Q. Do you know what it means to tell a story?

A. No.

Q. You don't? Do you know what it means to tell the truth?

A. No.

Q. You don't know what it means to tell the truth? If I said that I had on a blue shirt, would I be telling the truth?

A. (Witness shakes head negatively.)

Q. I would not? What color is my shirt?

A. Blue.

Q. So if I had a blue shirt, then I would be telling the truth, wouldn't I?

A. (No response.)

. . . .

Q. Do you go to church or Sunday School?

A. I go to church.

. . . .

Q. You learned about Jesus in the manger at church. Is that right?

A. Yes.

Q. Would Jesus want you to tell the truth?

**STATE v. WARD**

[118 N.C. App. 389 (1995)]

A.  Yes.

Q.  Would Jesus tell you to tell a story?

A.  (Witness shakes head negatively.)

. . . .

Q.  And if the judge asks you to tell the truth today, will you tell the truth?

A.  Yes.

Q.  Can you answer yes or no? If the judge wants you to tell the truth today, can you tell the truth?

A.  No.

Q.  You won't? Do you mean that you would tell the judge a story today?

A.  No.

. . . .

Q.  Will you tell the truth today about what happened to you?

A.  (Witness nods head affirmatively.)

Relevant portions of the court's conversation with the victim were:

THE COURT: Now do you go to church?

THE WITNESS: Yes.

THE COURT: You indicated or you said that you knew you were supposed to tell the truth and what happens if you don't tell the truth?

THE WITNESS: I get a whipping.

. . . .

THE COURT: If I said your name was Mary, would I be telling the truth?

THE WITNESS: No. My name is Crystal.

. . . .

THE COURT: If I said your name was Crystal, would I be telling the truth?

STATE v. WARD

[118 N.C. App. 389 (1995)]

THE WITNESS: Yes.

. . . .

THE COURT: If I said the lady over on the end over here was Mrs. Wilson, would I be telling the truth?

THE WITNESS: No.

THE COURT: If I said her name was Mrs. Sims, would I be telling the truth?

THE WITNESS: Yes.

Based on this testimony and our prior cases, we hold that the trial court did not abuse its discretion in finding the victim competent to testify and allowing her to testify. Any contradictions in her testimony went to her credibility, rather than her competency to testify. *State v. Cooke*, 278 N.C. 288, 291, 179 S.E.2d 365, 368 (1971).

II.

**[2]** Defendant next argues that the trial court erred in admitting hearsay testimony of Dr. Santos, Ms. Stewart, Ms. Shephard, and Detective Sims. These four witnesses testified about statements that the victim made to them which identified defendant as the person who sexually abused the victim. "To introduce hearsay evidence in a criminal trial, the prosecution must meet two requirements: (1) it must show the necessity for using hearsay testimony, and (2) it must establish the inherent trustworthiness of the original declaration." *State v. Jones*, 89 N.C. App. 584, 589, 367 S.E.2d 139, 143 (1988). In *Jones*, we found that the necessity requirement was satisfied because the victim was found incompetent to testify and thus was unavailable. *Jones* at 589-90, 367 S.E.2d at 143. In reaching that conclusion, we stated that " '[t]he unavailability of the victim due to incompetency and the evidentiary importance of the victim's statements adequately demonstrate[d] the necessity' requirement of the two-part hearsay test." *Jones* at 590, 367 S.E.2d at 143, *quoting State v. Gregory*, 78 N.C. App. 565, 568, 338 S.E.2d 110, 112-13 (1985), *review denied*, 316 N.C. 382, 342 S.E.2d 901 (1986). Because the victim here was available and did testify, defendant argues that the necessity requirement was not met. We disagree.

Once the infant victim here was declared competent to testify, she briefly answered a few questions asked by the State's counsel and then was cross examined by defendant's counsel. She never testified

about anything dealing with the charges in the case. A review of the transcript of her limited testimony shows clearly that the victim was neither cooperative nor responsive. Because the victim's testimony was so limited and because of her uncooperativeness, we hold that the victim was in fact "unavailable" for purposes of testifying at trial. Combining her *de facto* unavailability with the evidentiary importance of her statements, we hold that the hearsay testimony of the witnesses was "necessary" under the two-part hearsay test.

The second requirement of the two-part hearsay test requires the prosecution to establish the inherent trustworthiness of the original declaration. Defendant's brief does not dispute that the State established the inherent trustworthiness of the original declaration. Accordingly, we need not address the second requirement and hold that the trial court did not err in admitting the hearsay testimony of Dr. Santos, Ms. Stewart, Ms. Shephard, and Detective Sims.

III.

[3] Defendant next argues that the trial court erred in refusing to instruct the jury on attempted first degree sexual offense and attempted first degree rape. Dr. Santos testified that the victim had shown her on anatomical dolls how defendant touched her rectum with his finger. Ms. Stewart testified that the victim told her that defendant "hurted [sic] [her] tail, too." Based on this testimony, defendant, at the charge conference, moved that an instruction on attempted first degree sexual offense be given. Defendant also requested an instruction on attempted first degree rape based on Dr. Sinal's testimony that she found a tear in the victim's anal area that "was consistent with attempted penetration or penetration."

"A trial court must submit a lesser included offense instruction if the evidence would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater." *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986), *citing State v. Strickland*, 307 N.C. 274, 286, 298 S.E.2d 645, 654 (1983). However, when the State seeks a conviction only on the greater offense and tries the case on an "all or nothing basis," the trial court needs to present an instruction on the lesser offense only when the "defendant presents evidence thereof or when the State's evidence is conflicting." *State v. Bullard*, 97 N.C. App. 496, 498, 389 S.E.2d 123, 124, *review denied*, 327 N.C. 142, 394 S.E.2d 181 (1990).

Here, the State proceeded on an "all or nothing basis." The defendant presented no evidence tending to show attempted first degree sexual offense or attempted rape. Instead, defendant only presented evidence to establish the defense that he was not with the victim on the weekend when she was allegedly abused and that the victim's mother actually abused her. Accordingly, defendant was entitled to an instruction on the lesser included offenses only if the State's evidence was contradicted. Defendant argues that the testimony by the State's witnesses, Dr. Santos, Ms. Stewart, and Dr. Sinal, created conflicts in the State's evidence. We disagree.

In *State v. Johnson*, 317 N.C. 417, 347 S.E.2d 7 (1986), our Supreme Court held that evidence was conflicting because on direct examination, the victim testified that "she complied with the assailant's instructions to put his penis into her vagina," but on cross examination, the victim testified that she had told the police that the assailant tried to penetrate her but could not. *Johnson* at 436, 347 S.E.2d at 18. Our Supreme Court concluded that this testimony created a conflict in the evidence as to whether penetration occurred. *Id.*

The testimony elicited by defendant created no conflict in the evidence. The State presented evidence that defendant vaginally and anally penetrated the victim. The victim told her mother, Dr. Santos, Ms. Stewart, Ms. Shephard and Detective Sims that defendant "put his bone in her cootie-coo" and hurt her. The victim also demonstrated to Dr. Santos, Ms. Stewart, and Ms. Shephard on anatomical dolls where defendant had touched and penetrated her and showed Ms. Stewart that defendant had also "put his bone" in her anal opening. While defendant contends the testimony by Ms. Stewart, Dr. Santos, and Dr. Sinal created a conflict, their testimony merely showed that defendant touched the victim in addition to committing acts sufficient to convict for first degree sexual offense and first degree rape. Accordingly, we conclude that the trial court did not err in refusing to instruct the jury on attempted first degree rape and attempted first degree sexual offense.

IV.

Defendant finally argues that the trial court erred by signing and entering the judgment finding him guilty. From our review of the record and based on our conclusions above, we hold that the trial court did not err in signing and entering the judgment.

No error.

Judges WALKER and McGEE concur.