STATE OF NORTH CAROLINA v. MARVIN LESTER WOODY

No. COA95-1358

(Filed 5 November 1996)

**1. Jury § 137 (NCI4th)— first-degree sexual offense against child—jury selection—questions regarding interracial marriage—not allowed**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by not allowing an inquiry as to whether a prospective juror

**STATE v. WOODY**

[124 N.C. App. 296 (1996)]

had any prejudice or bias against people of different races being married to each other where defendant was permitted to inquire into the fitness and competency of all prospective jurors and defendant failed to show how he was prejudiced. Regulation of the manner and extent of inquiry of prospective jurors rests largely in the court's discretion and a trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of reasoned decision.

**Am Jur 2d, Criminal Law § 155; Infants §§ 15, 17.5.**

**Racial or ethnic prejudice of prospective jurors as proper subject of inquiry or ground of challenge on voir dire in state criminal case. 94 ALR3d 15.**

2. **Evidence and Witnesses § 2517 (NCI4th)— first-degree sexual offense against child—child's testimony as to defendant's age**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by allowing her to testify to defendant's age. Defendant's age was within the victim's personal knowledge and her testimony was not hearsay; moreover, defendant later testified to his age.

**Am Jur 2d, Witnesses §§ 75, 76.**

**Validity, construction, and application of 18 USCS sec. 2251, penalizing sexual exploitation of children. 99 ALR Fed. 643.**

3. **Evidence and Witnesses § 1932 (NCI4th)— first-degree sexual offense against child—written statement of victim —authentication**

The written statement of an eight-year-old victim of first-degree sexual offenses was authenticated by the testimony of the victim and a detective. Although the victim initially noted that her handwriting looked different now, she identified the yellow paper on which she wrote the statement and testified that the handwriting was her handwriting when she was eight years old, and the detective testified that he had given the victim a blank yellow pad and asked her to write down what defendant had done, that he had remained outside the room and that no one else was allowed into the room, that the victim handed her statement,

written on yellow paper, to the detective, that the detective read the statement and had the victim read it, and that he had complete custody and control of the statement from that date until trial.

**Am Jur 2d, Evidence §§ 1023, 1024, 1032.**

**Validity, construction, and application of 18 USCS sec. 2251, penalizing sexual exploitation of children. 99 ALR Fed. 643.**

**4. Evidence and Witnesses § 3195 (NCI4th)— first-degree sexual offense against child—child's written statement— admissible to corroborate child's testimony**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by allowing the State to combine the victim's trial testimony with a prior written statement. A prior consistent statement of a witness is admissible to strengthen the witness's credibility and it makes no difference whether the evidence appears in a verbal or written statement or whether it is verified. This witness's prior written statement was correctly allowed to corroborate her in-court testimony.

**Am Jur 2d, Witnesses §§ 641 et seq.**

**Validity, construction, and application of 18 USCS sec. 2251, penalizing sexual exploitation of children. 99 ALR Fed. 643.**

**5. Evidence and Witnesses § 173 (NCI4th)— first-degree sexual offense against child—victim's feelings for defendant— admissible**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by allowing the State to introduce evidence as to whether she loved the defendant. She testified that she loved her father before the alleged abuse but no longer; this change in affection towards defendant is relevant and the determination of whether the probative value is outweighed by the danger of unfair prejudice is within the discretion of the trial judge. N.C.G.S. § 8C-1, Rule 401; N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Evidence §§ 556 et seq.**

Validity, construction, and application of 18 USCS sec. 2251, penalizing sexual exploitation of children. 99 ALR Fed. 643.

6. **Evidence and Witnesses § 2907 (NCI4th)— redirect examination—line of questioning from direct examination**

The trial court did not abuse its discretion in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by allowing the State on redirect examination of the daughter to ask about a gun in defendant's possession where the daughter had been asked on direct examination whether she was afraid of defendant and whether he had ever threatened her. Since the State could have continued with this line of questioning on direct, it was within the court's discretion to allow the State to ask about the gun on redirect.

**Am Jur 2d, Witnesses § 425.**

**Validity, construction, and application of 18 USCS sec. 2251, penalizing sexual exploitation of children. 99 ALR Fed. 643.**

7. **Evidence and Witnesses § 961 (NCI4th)— first-degree sexual offense against child—child's statements to doctor—admissible**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by admitting a doctor's testimony concerning statements made by the victim to the doctor where the victim was seen under a Child Medical Exam program administered by the Stanley County Department of Social Services in which a comprehensive history is taken from the child alone, a complete physical is done with the parent present, and the doctor renders a medical diagnosis based on both the history and the physical. The victim's statements to the doctor fall within the medical exception to the hearsay rule.

**Am Jur 2d, Evidence §§ 785 et seq.**

**Admissibility against beneficiary of life or accident insurance policy of statements of third persons included in or with proof of death. 1 ALR2d 365.**

**8. Rape and Allied Sexual Offenses § 107 (NCI4th)— first-degree sexual offense—victim engaging in fellatio with defendant—sexual act by defendant**

There was sufficient evidence of first-degree sexual offense where evidence presented by the State showed that defendant forced the victim to engage in fellatio with him and that he attempted to place his penis in her vagina, and the victim testified that defendant put a little of his finger into her vagina. Defendant's argument that the victim engaged in fellatio with him and that he performed no sexual act with her is meritless.

**Am Jur 2d, Rape §§ 53 et seq.**

**9. Rape and Allied Sexual Offenses § 123 (NCI4th)— first-degree sexual offense—instruction on attempt as lesser included offense—refused**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by denying defendant's motion to instruct the jury on the lesser included offense of attempted first-degree sexual offense where the State tried the case on an all or nothing basis, seeking only a conviction on the greater offense, the defendant did not present evidence of the lesser offense, and the State's evidence was not conflicting.

**Am Jur 2d, Rape §§ 108-111.**

**Propriety of, or prejudicial effect of omitting or of giving, instruction to jury, in prosecution for rape or other sexual offense, as to ease of making or difficulty of defending against such a charge. 92 ALR3d 866.**

**10. Criminal Law § 890 (NCI4th Rev.)— first-degree sexual offense against child—instructions on continued deliberations—no error**

The trial court did not err in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter by recharging the jury on its own motion where the jury began its deliberations after the trial court's instructions at 12 noon; at 1:25 they were excused for lunch until 2:30; at 3:00 the jury indicated to the court that they were having difficulty reaching a verdict; the trial court charged the jury using N.C.P.I. Crim. 101.40; the foreman sent a note to the jury at 3:55 p.m. indicating that some jurors were still voting not guilty; the court charged the jury pur-

STATE v. WOODY

[124 N.C. App. 296 (1996)]

suant to N.C.G.S. § 15A-1235; and the foreman announced at 4:55 that the jury had reached a verdict. Applying the reasoning of *State v. Patterson*, 332 N.C. 409, the trial court's instructions were not an attempt to coerce the jury, but rather to impress upon the jury the importance of reaching a verdict.

**Am Jur 2d, Criminal Law § 155; Infants §§ 15, 17.5.**

11. **Criminal Law § 448 (NCI4th Rev.)— first-degree sexual offense against child—prosecutor's argument—no gross impropriety**

There was no gross impropriety requiring intervention *ex mero motu* during the prosecutor's closing argument in a prosecution for first-degree sexual offense involving the defendant's eight-year-old daughter where the prosecutor argued that there were only 12 people in the world who could protect the little girl from the 26-year-old bully.

**Am Jur 2d, Trial §§ 664 et seq.**

Appeal by defendant from judgment entered 25 August 1995 by Judge Sanford L. Steelman, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 22 August 1996.

*Attorney General Michael F. Easley, by Associate Attorney General Sondra C. Panico, for the State.*

*James A. Phillips, Jr. for defendant-appellant.*

WALKER, Judge.

Defendant was convicted of first degree statutory sexual offense and was sentenced to a term of life imprisonment. Evidence presented by the State tended to show that during October 1993, the defendant subjected his eight-year-old daughter, N.W., to oral and vaginal intercourse and other sexual touching. In February 1994, N.W., her mother and her three siblings moved out of the residence they were sharing with the defendant and moved in with N.W.'s grandmother. Shortly after the move, N.W. disclosed to her mother and grandmother the acts defendant had done to her while she lived with him. On 23 February 1994, N.W. was examined by Dr. Linda Williamson Lawrence, a pediatrician, who corroborated N.W.'s allegations of sexual abuse.

The defendant testified that he was never alone with N.W. or any of his children and that the acts N.W. testified to never occurred.

**[1]** Defendant presents eleven assignments of error on appeal. First, the defendant claims the trial court committed reversible error in not allowing an inquiry as to whether a prospective juror had any prejudice or bias against persons of a different race being married to each other. Defendant argues that because he could not explore the bias and prejudice of each prospective juror, his right to fully examine these jurors was violated and constituted prejudicial error. However, the record shows that the defendant was permitted to inquire into the fitness and competency of all prospective jurors.

The regulation of the manner and the extent of the inquiry of prospective jurors on *voir dire* is subject to the trial court's close supervision and rests largely in the court's discretion. *State v. Young*, 287 N.C. 377, 387, 214 S.E.2d 763, 771 (1975), *death penalty vacated*, 428 U.S. 903, 49 L. Ed. 2d. 1208 (1976), *(citing State v. Bryant*, 282 N.C. 92, 191 S.E.2d 745 (1972), *cert. denied*, 410 U.S. 987, 36 L. Ed. 2d 184 (1973)). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994) *(citing State v. Carson*, 320 N.C. 328, 357 S.E.2d 662 (1987)). Defendant fails to show how he was prejudiced by not being allowed to inquire into the juror's feeling on interracial marriage; therefore, this assignment of error is overruled.

**[2]** The defendant next argues that the trial court erred in allowing N.W. to testify as to his age without a proper foundation. The defendant contends that N.W.'s testimony was hearsay and therefore inadmissible.

Pursuant to N.C. Gen. Stat. § 8C-1, Rule 801, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the defendant's age was within N.W.'s personal knowledge and was not hearsay. Moreover, the defendant has not shown how he was prejudiced by this evidence, as he later testified to his age. Defendant's second assignment of error is overruled.

**[3]** In his third and fourth assignments of error, the defendant asserts that the trial court committed reversible error in allowing the State to combine N.W.'s oral trial testimony with a prior written statement made by N.W. which was introduced without a proper foundation. We disagree.

STATE v. WOODY

[124 N.C. App. 296 (1996)]

The defendant argues that the State failed to lay a proper foundation showing that the statement was written by N.W. Under N.C. Gen. Stat. § 8C-1, Rule 901(b)(2), authentication or identification may be established through "nonexpert opinion as to the genuineness of the handwriting, based upon familiarity not acquired for purposes of the litigation." Initially, when asked if the written statement was her own statement, N.W. stated that it might be her statement but her handwriting did not look the same now. However, she identified the paper writing as the yellow paper on which she wrote the statement for Detective Tracy Wyrick and testified that the handwriting on the papers was her handwriting when she was eight years old. Detective Wyrick also testified that on 23 February 1994, he gave N.W. a blank yellow legal pad, asked her to write down what the defendant had done to her, and left her alone in an interview room while he remained outside. He testified that no one else was allowed to enter the interview room and that when N.W. left the room, she handed him her written statement on the yellow note paper. Detective Wyrick also stated that he read the statement, asked N.W. to read it, and that he had complete custody and control of the written statement from that date until the trial. We find that the written statement was authenticated by the testimony of both N.W. and Detective Wyrick and was properly admitted into evidence.

[4] The defendant further contends that N.W.'s prior written statement should not have been combined with her oral testimony. However, in this State, a prior consistent statement of the witness is admissible to strengthen his/her credibility. "And it makes no difference, in this State at least, whether such evidence appears in a verbal or written statement, nor whether verified or not." *State v. Sauls*, 291 N.C. 253, 261, 230 S.E.2d 390, 394 (1976), *cert. denied*, 431 U.S. 916, 53 L. Ed. 2d 226 (1977) (*quoting Bowman v. Blankenship*, 165 N.C. 519, 522, 81 S.E. 746, 747 (1914)). Here, the trial court correctly allowed the State to introduce the prior written statement of N.W. to corroborate her in-court testimony and the third and fourth assignments of error are overruled.

[5] In his fifth assignment of error, the defendant argues that the trial court erred in allowing the State to introduce evidence as to whether N.W. loved the defendant. The defendant contends the evidence was improperly admitted because it was not relevant. In the alternative, he argues that even if the testimony was relevant, that the probative value was substantially outweighed by the unfair prejudice created by such testimony.

Pursuant to N.C. Gen. Stat. § 8C-1, Rule 401, relevant evidence is defined as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would have been without the evidence." Here, N.W. testified that she loved her father before the alleged sexual abuse but that she no longer loves him. This change in her affection towards the defendant is relevant to show that it is more likely that he committed these acts. Pursuant to N.C. Gen. Stat. § 8C-1, Rule 403, determining whether the probative value of such evidence is substantially outweighed by danger of unfair prejudice is within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). Again, the defendant has failed to show any prejudice by N.W. being allowed to testify that she no longer loves the defendant. This assignment of error is without merit.

[6] In the defendant's sixth assignment of error, he contends that the trial court erred in allowing the State to proceed into new areas of evidence upon redirect examination of N.W.

Generally, redirect examination cannot be used to repeat direct testimony or to introduce entirely new matter. However, "the trial judge has discretion to permit counsel to introduce relevant evidence which could have been, but was not brought out on direct." *State v. Williams*, 74 N.C. App. 394, 399, 328 S.E.2d 799, 802 (1985) (*quoting State v. Locklear*, 60 N.C. App. 428, 430, 298 S.E.2d 766, 767 (1983)). The testimony at issue here pertained to whether the defendant owned a gun. On direct examination, N.W. was asked whether she was afraid of the defendant and whether he had ever threatened her. She testified that defendant stated that he would kill her and her family if she told anyone what he did to her. Since the State could have continued with this line of questioning on direct to inquire of N.W. in what manner the defendant had threatened her, it was within the court's discretion to allow the State, in its redirect examination, to ask her about the gun in the defendant's possession. We conclude that the trial court did not abuse its discretion in allowing this line of questioning during the State's redirect of N.W.

[7] In his seventh assignment of error, defendant contends that the trial court erred in admitting Dr. Lawrence's testimony concerning statements made by the N.W. during the examination. The defendant argues that this testimony was hearsay and did not fall under N.C. Gen. Stat. § 8C-1, Rule 803(4) (allowing hearsay evidence if the statements are made for the purpose of medical diagnosis or treatment).

STATE v. WOODY

[124 N.C. App. 296 (1996)]

The medical exception to the hearsay rule provides the following statements are not excluded by the hearsay rule:

(4) Statements for the Purposes of Medical Diagnosis or Treatment—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof as reasonably pertinent to diagnosis or treatment.

N.C. Gen. Stat. § 8C-1, Rule 803(4). This exception applies whether or not the declarant is available as a witness.

Our Supreme Court has affirmed the application of Rule 803(4) to medical testimony of a child's statement given to the physician in child sex abuse and child rape cases. In *State v. Aquallo*, 318 N.C. 590, 350 S.E.2d 76 (1986), a Department of Social Services worker took the child to Dr. Sinal as part of the Child Medical Examination Program. The court held that the statements made by the child to the doctor were made for the purpose of treatment or diagnosis and held them admissible as substantive evidence under Rule 803(4). The court in *Aquallo*, found the victim's statements were pertinent to diagnosis and treatment for the following reasons:

First, the statements suggested to Dr. Sinal the nature of the problem, which, in turn, dictated the type of examination she performed for diagnostic purposes. Additionally, the victim's identification of the defendant as perpetrator was pertinent to continued treatment of the possible psychological and emotional problems resulting from the rape.

*Id.* at 597, 350 S.E.2d at 81.

Here, N.W. was seen by Dr. Lawrence's office under a Child Medical Exam program administered by the Stanly County Department of Social Services. Dr. Lawrence testified that as part of the child medical examination, she takes a comprehensive history from the child alone and then does a complete physical examination while the parent is present. Dr. Lawrence further testified that she then renders a medical diagnosis which is based on both the history obtained and the physical examination. Thus, we find that because N.W.'s statements to Dr. Lawrence were made during her medical diagnosis of N.W. they fall within the medical exception to the hearsay rule, and this assignment of error is overruled.

[8] In defendant's eighth assignment of error, he asserts that there was insufficient evidence to establish defendant's guilt of first degree statutory sexual offense.

In reviewing a trial court's denial of a motion to dismiss this Court must consider the evidence in the light most favorable to the State, giving the State the benefit of all permissible favorable inferences. *State v. Everhart*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982).

> If there is substantial evidence—whether direct, circumstantial or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Moss*, 332 N.C. 65, 70, 418 S.E.2d 213, 216 (1992) (*quoting State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citations omitted)).

A person is guilty of first degree statutory sexual offense if he engages in a sexual act with a child under the age of 13 years old and the defendant is at least 12 years old and is at least four years older than the victim. A sexual act is defined by statute as:

> [c]unnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body; provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes.

N.C. Gen. Stat. § 14-27.1(4) (1986). Under this definition, there are two types of sexual acts. The first type requires penetration by "any object" into two specifically named bodily orifices. The second type has been interpreted by our courts to require a touching. Fellatio is of this second type and "may be accomplished by mere touching of the male sex organ to the lips or mouth of another." *State v. Bailey*, 80 N.C. App. 678, 682, 343 S.E.2d 434, 437, *review improvidently allowed*, 318 N.C. 652, 350 S.E.2d 94 (1986) (*citing State v. Goodson*, 313 N.C. 318, 327 S.E.2d 868 (1985)). Defendant contends that by definition the act of vaginal intercourse is not a sexual act. Further, he argues because it was N.W. who performed fellatio on him, that he did not commit a sexual act with N.W.

Evidence presented by the State showed that the defendant would force N.W. to engage in fellatio with him and that he would

attempt to place his penis in her vagina. Additionally, there was testimony by N.W. that the defendant put "a little of his finger" into her vagina. This Court has previously held that a child victim performing fellatio on a defendant comes within the definition of "sexual act." *See State v. Hewett*, 93 N.C. App. 1, 12, 376 S.E.2d 467, 474 (1989). Defendant's argument that N.W. engaged in fellatio with him and thus he performed no sexual act with her is meritless, as "fellatio is defined to include any touching of the male sex organ by the lips, tongue or mouth of another person." *State v. Johnson*, 105 N.C. App. 390, 393, 413 S.E.2d 562, 564, *review denied*, 332 N.C. 348, 421 S.E.2d 158 (1992). This evidence, taken in a light most favorable to the State, was sufficient to withstand defendant's motion to dismiss the charge of first degree statutory sexual offense.

**[9]** In his ninth assignment of error, the defendant contends that the trial court committed reversible error in denying the defendant's motion to instruct the jury on the lesser included offense of attempted first degree sex offense which he requested at the charge conference.

In *State v. Ward*, 118 N.C. App. 389, 455 S.E.2d 666 (1995), this Court held that "a trial court must submit a lesser included offense instruction if the evidence would permit a jury rationally to find defendant guilty of the lesser included offense and acquit him of the greater." *Id.* at 398, 455 S.E.2d at 671 (*quoting State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986)). However, if the State tries the case on an "all or nothing basis," seeking a conviction only on the greater offense, then the trial court needs to present an instruction on the lesser included offense only when the "defendant presents evidence thereof or when the State's evidence is conflicting." *Id.* at 398, 455 S.E.2d at 671 (*quoting State v. Bullard*, 97 N.C. App. 496, 498, 389 S.E.2d 123, 124, *review denied*, 327 N.C. 142, 394 S.E.2d 181 (1990)).

The State proceeded in this case on an "all or nothing" basis. Thus, the trial judge needed only to instruct the jury on a lesser included offense if the defendant presented evidence of the lesser included offense or if the State's evidence was conflicting. Neither of these situations occurred in this case. The defendant testified he was never alone with N.W. and therefore did not sexually assault her. On the other hand, the State's evidence at trial was not conflicting, as the testimony of N.W., Dr. Lawrence and the other corroborating witnesses all tended to show that the defendant forced N.W. to perform

fellatio and that N.W. was also vaginally penetrated. The trial court properly denied defendant's request to charge on the lesser included offense.

**[10]** In his tenth assignment of error, the defendant asserts that the trial court committed reversible error when it recharged the jury on its own motion.

The jury began its deliberations after the trial court's instructions at 12 noon. At 1:25 p.m., the jury was excused for lunch until 2:30 p.m. The jury then resumed its deliberations. However, at 3:00 p.m. they indicated to the court that they were having difficulty reaching a verdict. The trial court again charged the jury using N.C.P.I., Crim. 101.40 regarding the failure of a jury to reach a verdict. At 3:55 p.m., the foreman sent a note to the court indicating that some of the jurors were still voting "not guilty." The court then charged the jury pursuant to N.C. Gen. Stat. § 15A-1235, which urged the jurors to re-examine their own views without surrendering their convictions. At 4:55 p.m., the foreman announced that the jury had reached a verdict.

In *State v. Patterson*, 332 N.C. 409, 420 S.E.2d 98 (1992), the jury began its deliberations at 3:47 p.m. and continued until the jurors were adjourned at 5:06 p.m. Deliberations resumed the next morning at 9:37 a.m. From 9:56 a.m. until 10:27 a.m. the jurors returned to the courtroom and examined exhibits. At 11:15 a.m., the court was notified by a letter from the jury that the jury was unable to reach a unanimous decision. The court then charged the jury under N.C. Gen. Stat. § 15A-1235, and the jury resumed deliberations at 11:24 a.m. *Id.* at 414, 420 S.E.2d at 100. At 11:55 a.m., the jury sent another note to the court stating it was hopelessly deadlocked. The judge told the jurors he felt they should continue deliberating and declared a lunch recess. After lunch, the judge again charged the jury under N.C. Gen. Stat. § 15A-1235. Fifty-five minutes later, the jury returned with a guilty verdict. *Id.* at 415, 420 S.E.2d at 101.

The defendant in *Patterson* argued that the trial court coerced a verdict by refusing to grant a mistrial when the jury stated they were hopelessly deadlocked. In determining whether a court has coerced the jury into a verdict, we must analyze the totality of the circumstances facing the trial court when it acted. *Id.* at 416, 420 S.E.2d at 101. In *Patterson*, the Supreme Court found that the following circumstances existed: The jury deliberated for less than four hours, the jury was instructed in strict accordance to N.C. Gen. Stat. § 15A-1235, the jurors were reminded not to forsake their honest convictions and

the "trial court never impugned the efforts of the jury or implied in any way that the jury might be held for any unreasonable period of time to reach a unanimous verdict." *Id.* at 416, 420 S.E.2d at 101. The court found, based on the totality of these circumstances, that "its refusal to grant a mistrial nor any of its other actions at trial were coercive of the jury's verdict." *Id.*

The circumstances in the instant case are very similar to the facts in *Patterson.* In both cases, the jury deliberated for approximately four hours with repeated breaks in deliberations. This is not an unreasonable length of time. Additionally, both crimes involved felonies that could result in life imprisonment for the defendants. The trial judge in the instant case, like *Patterson,* charged the jury in accordance with N.C. Gen. Stat. § 15A-1235. Moreover, in this case, the defendant did not object to the court's decision to give the additional instruction to the jury and there is nothing in the record to indicate that the court was attempting to coerce the jury. Thus, applying the reasoning of *Patterson* to these facts, we find the trial court's instructions to the jury were not an attempt to coerce the jury, but rather were given to impress upon the jury the importance of reaching a verdict.

**[11]** Defendant's final assignment of error charges that the trial court committed reversible error in permitting the prosecutor to argue that N.W. could only be protected by the jury.

In his closing argument, the prosecutor argued that "[t]here are only 12 people in this world who can do something to protect that little girl from that 26-year-old bully." The defendant claims that because there was no evidence introduced which tended to show the defendant constituted a present threat to N.W., the prosecutor improperly made an argument on the basis of matters outside the record in violation of N.C. Gen. Stat. § 15A-1230.

In *State v. Small,* 328 N.C. 175, 400 S.E.2d 413 (1991), the Court stated:

[t]he conduct of the arguments of counsel is left to the sound discretion of the trial judge. In order for defendant to be granted a new trial, the error must be sufficiently grave that it is prejudicial. Ordinarily, an objection to the arguments by counsel must be made before verdict, since only when the impropriety is gross is the trial court required to correct the abuse ex mero motu.

*Id.* at 185, 400 S.E.2d at 418 (*citing State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977)).

Unless the defendant objects, the trial court is not required to interfere ex mero motu unless the arguments " 'stray so far from the bounds of propriety as to impede the defendant's right to a fair trial.' " *Id.* (*citing State v. Harris*, 308 N.C. 159, 169, 301 S.E.2d 91, 98 (1983)), (*quoting State v. Davis*, 305 N.C. 400, 421, 290 S.E.2d 574, 587 (1982)).

Here, the defendant did not object at the time that the prosecutor was making his closing argument. Thus, the trial court was not required to interfere on its own unless the prosecutor's remarks were so grossly inappropriate as to impede the defendant's right to a fair trial. We find that the prosecutor's statements were within the bounds of propriety and did not impede the defendant's right to a fair trial.

No error.

Judges EAGLES and McGEE concur.