STATE OF NORTH CAROLINA v. DEVOZEO PERSON, Defendant

No. COA06-1507

(Filed 18 December 2007)

**1. Rape; Sexual Offenses— first-degree rape—first-degree sexual offense—personal use of dangerous weapon—insufficient evidence**

The trial court erred by denying defendant's motion to dismiss the charges of first-degree rape as a principal and first-degree sexual offense by anal intercourse based upon insufficient evidence that defendant personally employed or displayed a dangerous weapon during commission of those offenses, although his accomplice displayed a gun, and the case is remanded to the trial court with instructions to enter judgment for second-degree rape and second-degree sexual offense.

**2. Appeal and Error— preservation of issues—motions to dismiss—assignment of error**

Defendant was not procedurally barred on appeal from arguing that he could not properly be convicted of first-degree rape as a principal or first-degree sexual offense by anal intercourse because there was no evidence that defendant personally employed or displayed a dangerous weapon during commission of those offenses where it was apparent that defendant's motions to dismiss all charges at the close of the State's evidence and at the close of all evidence were based upon the insufficiency of the evidence, and defendant's assignment of error to "the trial court's denial of defendant's motions to dismiss the charges on the grounds that the evidence was insufficient to prove each and every element of the crimes beyond a reasonable doubt" was adequate under N.C. R. App. P. 10(c)(1).

**3. Rape— first-degree rape based on acting in concert—instructions—plain error analysis—fundamental error—double jeopardy**

The trial court committed plain error by its instructions to the jury regarding the second charge of first-degree rape based on acting in concert with someone else, and defendant is entitled to a new trial on this charge, because: (1) the instruction allowed the jury to convict defendant based on the theory of acting in concert regardless of whether the jury believed that defendant had

acted together with the accomplice as the accomplice committed the offense, or believed that defendant committed the offense acting alone; (2) fundamental error occurred since the trial court instructed the jury in a manner such that the jury was allowed to convict defendant twice for the same offense in violation of his right against double jeopardy; and (3) the holding in *State v. Graham*, 145 N.C. App. 483 (2001), that such an error was fundamental is controlling and renders immaterial any consideration whether the jury's verdict was affected.

**4. Sexual Offenses— first-degree sexual offense by anal intercourse—instructions—penetration—attempt**

The trial court did not commit plain error by failing to instruct the jury regarding "attempt" in connection with the charge of first-degree sexual offense by anal intercourse, because: (1) the fact that defendant struggled to penetrate is far from equivocal and in no way negates a completed act; (2) the State presented DNA evidence that defendant's sperm was found on the anal swab collected from the victim following the attack, which provided unequivocal evidence of penetration equivalent to the victim's testimony; and (3) in addition to the DNA evidence, there was also the victim's testimony indicating that defendant struggled in engaging in anal intercourse, but never specifically excluded penetration.

**5. Constitutional Law— effective assistance of counsel—failure to request instruction**

Defendant did not receive ineffective assistance of counsel based on defense counsel's failure to request that the jury be instructed on the offense of attempted first-degree sexual offense, because the Court of Appeals' conclusion that the trial court was not required to provide an instruction on the attempted crime, even if it had been requested to do so, necessarily established that defendant was not denied effective assistance of counsel.

**6. Constitutional Law— right to trial by jury—consideration of defendant's refusal of plea offer and election to go to trial—credibility**

The trial court did not err or commit plain error during sentencing in a robbery with a dangerous weapon, second-degree kidnapping, first-degree rape as the principal, first-degree rape by acting in concert with someone else, first-degree sexual offense

by fellatio, first-degree sexual offense by anal intercourse, and first-degree sexual offense by digital penetration case when it allegedly considered the fact that defendant refused a plea offer and chose instead to exercise his right to a jury trial, because: (1) although there was a dispute over whether defendant properly preserved this argument for appellate review, an error at sentencing is not considered an error at trial for the purpose of N.C. R. App. P. 10(b)(1), and thus the rule does not have any application when a defendant seeks to challenge the finding of an aggravating factor at sentencing; (2) given the context of the pertinent comments, it cannot be inferred that the judge improperly considered defendant's election to go to trial in sentencing defendant; (3) the remarks indicated that the judge was commenting instead on defendant's lack of credibility when claiming he wanted another opportunity to prove himself as an honorable law abiding, caring, loving man and citizen and that he had been misled by the wrong crowd; and (4) the judge's remarks pointed out that defendant was given precisely the opportunity he supposedly desired when the State offered to agree to certain concessions in exchange for his testimony against his coparticipant, and defendant refused.

## 7. Sentencing— restitution—ability to pay

The trial court did not err in a robbery with a dangerous weapon, second-degree kidnapping, first-degree rape as the principal, first-degree rape by acting in concert with someone else, first-degree sexual offense by fellatio, first-degree sexual offense by anal intercourse, and first-degree sexual offense by digital penetration case by ordering restitution to the victim in the amount of $2,300.52 to pay for the victim's medical expenses related to the attack, because: (1) although the court was required by N.C.G.S. § 15A-1340.36(a) to consider various factors regarding defendant's ability to pay in determining the precise amount of the restitution, the statute also specifically provided that the court is not required to make findings of fact or conclusions of law on these matters; (2) the liability for the restitution was joint and several with defendant's coparticipant, and the relatively modest amount of restitution and the terms of its payment are not such as to lead to a common sense conclusion that the trial court did not consider defendant's ability to pay; (3) defendant did not suggest at trial that he lacked the ability to pay this amount; and (4) defendant failed to cite any decision in which a North

Carolina appellate court reversed such a modest award of restitution for failure to consider defendant's ability to pay.

Judge JACKSON concurring in part, concurring in result only in part, and dissenting.

Appeal by defendant from judgments entered 2 March 2006 by Judge Jesse B. Caldwell III in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 June 2007.

*Attorney General Roy Cooper, by Assistant Attorney General K. D. Sturgis, for the State.*

*Office of the Public Defender, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

GEER, Judge.

Defendant Devozeo Person appeals from convictions for the following offenses: robbery with a dangerous weapon; second degree kidnapping; first degree rape as the principal; first degree rape by acting in concert with someone else; first degree sexual offense by fellatio; first degree sexual offense by anal intercourse; and first degree sexual offense by digital penetration. On appeal, defendant argues, and we agree, that the evidence at trial was insufficient to sustain the convictions for first degree rape and first degree sexual offense by anal intercourse. In addition, with respect to the conviction for first degree rape by acting in concert with someone else, defendant is entitled to a new trial since the jury instructions on that count were fatally flawed. Regarding the remaining convictions, however, we hold that defendant's trial was free of prejudicial error.

### Facts

At trial, the State's evidence tended to show the following facts. At about 2:00 a.m. on 7 December 2002, "Carla," a married mother of four children, finished work at a Kentucky Fried Chicken restaurant.[1] When she arrived home, she realized she had left a shirt at the restaurant that she needed to wear the next day. She drove back to work, retrieved the shirt, and returned to her apartment.

Upon arriving home the second time, Carla parked her car and was about to get out when she noticed a man standing next to her car

---

1. We use the pseudonym "Carla" in order to protect the privacy of the prosecuting witness and for ease of reading.

STATE v. PERSON

[187 N.C. App. 512 (2007)]

door. Immediately, she locked the door and put the keys back into the ignition. The man, Nicholas Johnson, pointed a gun at her and threatened to shoot if she did not open the door. After Carla complied, defendant approached and took her keys and cell phone. The men then went through her purse and stole the money inside, about $300.00, as well as a necklace and bracelet Carla was wearing.

The men opened the trunk of the car and ordered her to get inside. When she refused and pleaded with them to take everything, including the car, she was grabbed by her hair and forced into the trunk. The men drove around for approximately two hours, making a few brief stops, while Carla remained locked in the trunk. At one point, she succeeded in opening the trunk and tried to signal to another car, but the men stopped the car, threatened to shoot her if she tried to escape, and shut her back inside the trunk.

Eventually, defendant and Johnson stopped the car at an abandoned house. The men opened the trunk and took Carla behind the house. Johnson ordered her to sit on the steps and pull down her pants, but she refused. Johnson pointed the gun at her and threatened that she would never see her children again if she did not obey. When she still refused, Johnson himself pulled down her pants and underwear, inserted his fingers into her vagina, and remarked to defendant that he thought Carla was having her period. While still pointing the gun at Carla, Johnson first engaged in sexual intercourse followed by anal intercourse and then forced Carla to perform fellatio on him.

After Johnson finished, defendant inserted his penis in Carla's vagina and, after a while, told her to turn around. According to Carla's in-court testimony, which was related through an interpreter, defendant "tried" to put his penis in her rectum, but he "didn't last very long."

Before leaving on foot, the two men threatened Carla that if she went to the police, they would kill her and her children. When the men were gone, Carla went back to her car, found her keys, and drove away. She spotted police officers at a gas station and told them about the attack. The officers recognized Carla as a woman who had been reported as missing by her husband when she did not return home from work at the expected time.

Carla was taken to a hospital where a nurse and a doctor administered a sexual assault examination. Vaginal, anal, and oral swabs were taken from Carla. Sperm was found on the vaginal and anal swabs. Through subsequent testing, authorities learned that sperm on

the vaginal and anal swabs matched defendant's DNA profile. The probability that the source of the sperm was a member of the African-American population, other than defendant, was approximately 1 in 3.05 quadrillion.

After defendant was arrested in June 2005, he gave a statement to the police. Defendant told detectives that, with Nicholas Johnson holding the gun, the two men robbed the victim, put her in the trunk of the car, and drove her to an abandoned house. He admitted to watching as Johnson forced the victim to engage in fellatio and intercourse. Defendant admitted that he too had intercourse with the victim against her will, stating that he joined in because he was intoxicated.

In July 2005, defendant was indicted on the following charges: one count of robbery with a dangerous weapon; one count of first degree kidnapping; two counts of first degree rape; and three counts of first degree sexual offense based on acts of fellatio, anal intercourse, and digital penetration. Following a jury trial in February and March 2006 in Mecklenburg County Superior Court, defendant was convicted of one count of robbery with a dangerous weapon, one count of second degree kidnapping, first degree rape by acting in concert with another person, first degree rape as the principal, first degree sexual offense by fellatio, first degree sexual offense by anal intercourse, and first degree sexual offense by digital penetration.

The trial court sentenced defendant to a presumptive range term of 288 to 355 months for first degree rape as a principal, followed by consecutive presumptive range terms of 77 to 102 months for robbery with a dangerous weapon, 29 to 44 months for second degree kidnapping, and 230 to 285 months for first degree rape by acting in concert. In addition, the court imposed a presumptive range sentence of 288 to 355 months for first degree sexual offense by anal intercourse to run consecutive to the sentence for first degree rape by acting in concert. Finally, the court imposed two presumptive range sentences of 230 to 285 months for first degree sexual offense by fellatio and for first degree sexual offense by digital penetration, with the sentences running concurrently with each other, but consecutive to the sentence for first degree sexual offense by anal intercourse. The trial court also ordered defendant to pay $2,300.52 in restitution to the victim, noting that defendant and Nicholas Johnson were to be held jointly and severally liable for rendering payment. Defendant gave timely notice of appeal to this Court.

I

[1] Defendant first argues that the trial court erred in denying his motion to dismiss the charges of first degree rape and first degree sexual offense by anal intercourse because there was insufficient evidence showing that defendant employed or displayed a dangerous weapon during commission of these offenses. Both rape and sexual offense crimes are elevated to the first degree when the actor "[e]mploys or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon." N.C. Gen. Stat. §§ 14-27.2(a)(2)(a), -27.4(a)(2)(a) (2005).

Defendant asserts that our prior decision in *State v. Roberts*, 176 N.C. App. 159, 163-64, 625 S.E.2d 846, 850 (2006), is controlling. In *Roberts*, we held that when a defendant is charged with first degree sexual offense as a principal and not on the theory of acting in concert or aiding and abetting, "the evidence must support a finding that defendant personally employed or displayed a dangerous or deadly weapon in the commission of the sexual offense." *Id.* at 164, 625 S.E.2d at 850. *See also State v. Wilson*, 345 N.C. 119, 123, 478 S.E.2d 507, 510 (1996) (noting that "in the absence of an acting in concert instruction, the State must prove that the defendant committed each element of the offense").

In this case, the indictments charging defendant with first degree rape as a principal and first degree sexual offense by anal intercourse alleged that defendant committed the acts while "displaying a handgun, a dangerous and deadly weapon . . . ." When the trial judge instructed the jury on each of those charges, he instructed that the jury needed to find, as a requisite element of the offense, that defendant employed or displayed a dangerous or deadly weapon. The judge did not, with respect to those two charges, provide any instruction that would have allowed the jury to convict defendant for "acting in concert" with Nicholas Johnson.

[2] We agree with defendant that *Roberts* is controlling under these facts. Indeed, the State, in its brief, concedes that it is unable to distinguish *Roberts*. The State nevertheless argues that defendant's argument is procedurally barred because his motion to dismiss and assignment of error were "broadside" and, therefore, insufficient under our appellate rules. We disagree.

At trial, defendant moved to dismiss all the charges at the close of the State's evidence and at the close of all the evidence, and thus

he sufficiently preserved the denial of his motion for appellate review under N.C.R. App. P. 10(b)(3). Although defendant provided no specific reasoning to support the motion to dismiss, he was not required to do so, since it was apparent from the context that he was moving to dismiss all the charges based on the insufficiency of the evidence. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make *if the specific grounds were not apparent from the context.*" (emphasis added)). *See also State v. Mueller*, 184 N.C. App. 553, 559, 647 S.E.2d 440, 446 (2007) (rejecting State's argument that defendant only preserved right to appeal denial of motion to dismiss with respect to charges for which defendant provided specific argument to trial court and holding that defendant "did preserve his right to appeal all of the convictions before us based upon an insufficiency of the evidence to support each conviction").

Defendant then assigned error to "[t]he trial court's denial of defendant's motions to dismiss the charges on the grounds that the evidence was insufficient to prove each and every element of the crimes charged beyond a reasonable doubt." This assignment of error is adequate under N.C.R. App. P. 10(c)(1), which specifies that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." Defendant's assignment of error is confined to a single issue of law— the appropriateness of the denial of defendants' motions to dismiss at the close of the State's evidence and the close of all the evidence— and specifies the legal basis for the assignment of error. We see no reasonable basis for requiring criminal defendants to include anything more in an assignment of error addressing the sufficiency of the evidence. Indeed, the requirement sought by the State would amount to a significant departure from prior appellate practice—such a change should be imposed only prospectively and only by our Supreme Court.

Since the issue is properly before this Court and the record contains no evidence showing defendant's personal use or display of a dangerous weapon, "[t]he evidence is insufficient to permit a reasonable jury to convict defendant of [the] first degree" offenses for which no acting in concert instruction was given. *Roberts*, 176 N.C. App. at 164, 625 S.E.2d at 850. We, therefore, vacate the judgments for first degree rape as a principal and first degree sexual offense based on

anal intercourse. Since, however, the jury necessarily determined that defendant's conduct satisfied the elements of second degree rape and second degree sexual offense by anal intercourse, we remand to the trial court with instructions to enter judgment for second degree rape and second degree sexual offense. *See id.*

II

[3] In his next argument, defendant challenges the trial court's instructions to the jury regarding the second charge of first degree rape based on "acting in concert with someone else." In the final mandate with respect to this "acting in concert" charge, the trial court stated:

> Now members of the jury, I charge you therefore, that if you find, beyond a reasonable doubt, that on or about the alleged date, the Defendant *acting either by himself or acting with* [sic] *together with someone else*, members of the jury, engaged in vaginal intercourse with the victim, and that he did so by force or threat of force, and that this was sufficient to overcome any resistance which the victim might make, and that the victim did not consent, and it was against her will, and that the Defendant employed or displayed a weapon, members of the jury, of a dangerous or deadly weapon, then it would be your duty to return a verdict of guilty of first degree rape, members of the jury, by acting in concert with someone else.

(Emphasis added.) Defendant contends that the trial court erred in this instruction by referring to guilt both as a principal and by acting in concert. Defendant's trial counsel did not object to this instruction and, therefore, defendant asks that we review for plain error. *See* N.C.R. App. P. 10(c)(4) ("In criminal cases, a question which was not preserved by objection noted at trial . . . may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.").

In support of his argument that the challenged jury instruction constitutes plain error, defendant relies upon *State v. Graham*, 145 N.C. App. 483, 487, 549 S.E.2d 908, 911 (2001). In *Graham*, as in this case, the defendant sexually assaulted his victims with the participation of an accomplice. The *Graham* defendant was tried on multiple charges based both on his own individual conduct and on the theory of "acting in concert" with the accomplice. When instructing the jurors on the offenses based only on "acting in concert," the trial

court directed the jury: "So I charge that if you find from the evidence beyond a reasonable doubt that on or about June 13th, 1997, the defendant acting *either by himself* or acting together with [the accomplice] committed these offenses, then you would find him guilty." *Id.* at 486, 549 S.E.2d at 911. We held that the trial court erred in giving this instruction:

> The State contends the foregoing instruction was proper because it was taken from the pattern jury instruction for acting in concert. However, defendant correctly asserts that the cited instruction allowed the jury to convict him twice for the same crime. To be precise, the jury instruction allowed the jury to convict defendant based on the theory of acting in concert regardless of whether the jury believed that defendant had acted together with [the accomplice] as [the accomplice] committed the offense, or believed that defendant committed the offense acting alone. Since defendant was separately convicted for all of the same offenses based on his own actions, the cited jury instructions allowed defendant to be convicted twice for the same offense, and thus violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution and under Article I, § 19, of the North Carolina Constitution to be free from double jeopardy. Thus, use of the pattern instructions without appropriate amendment under the circumstances of this particular case rendered the charge confusing.

*Id.* at 487, 549 S.E.2d at 911 (internal citations omitted).

Since, like here, the defendant in *Graham* did not object to the instruction at trial, the Court was required to determine whether the error constituted plain error. The Court held: "[W]here the trial court instructed the jury in a manner such that the jury was allowed to convict defendant twice for the same offense, *fundamental error occurred*. Defendant is therefore entitled to a new trial with corrected jury instructions for the crimes with which he was charged on the basis of acting in concert with [the accomplice]." *Id.* (emphasis added).

The holding in *Graham* is directly applicable to this case. Defendant was tried on two counts of first degree rape, one for his own conduct and one for acting in concert with Nicholas Johnson. The jury instruction in this case is virtually indistinguishable from the instruction in *Graham* and effectively "allowed the jury to convict [defendant] twice for the same crime." *Id.* Although the State and the

dissent seek to distinguish *Graham* on the grounds that the jury instruction—even if erroneous—was not sufficiently prejudicial to have a probable impact on the jury's verdict, *Graham's* holding that such an error was "fundamental" is controlling and renders immaterial any consideration whether the jury's verdict was affected.

We are barred by controlling Supreme Court authority from adopting the dissent's suggestion that, for purposes of plain error analysis, "[m]erely labeling an error as 'fundamental' does not relieve this Court of the obligation to review the error for harmlessness." In *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997), with now Chief Justice Parker writing for the Court, the Supreme Court specifically held: To successfully establish plain error, defendant must demonstrate "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial."

This holding arose out of prior decisions by the Supreme Court also indicating that plain error may be established by *either* of two methods, including showing that a different result would probably have been reached *or* that the error was sufficiently fundamental. *See, e.g., State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (accord). Indeed, the Supreme Court has since repeated this bifurcated standard in *State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 ("Under the plain error standard of review, defendant has the burden of showing: '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " (quoting *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779)), *cert. denied*, 534 U.S. 1023, 160 L. Ed. 2d 500, 125 S. Ct. 659 (2004). *See also State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (accord); *State v. Braxton*, 352 N.C. 158, 197, 531 S.E.2d 428, 451 (2000) (accord), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797, 121 S. Ct. 890 (2001).

The dissent never addresses the standard set out in *Bishop*, *Black*, *Jones*, *Anderson*, *Braxton*, and other cases. We are bound by that articulation until the Supreme Court holds otherwise. Under those opinions, an error that is so fundamental as to result in a miscarriage of justice constitutes plain error. *Graham* has specifically held that the type of jury instruction used in this case constitutes just such a fundamental error. We are bound by *Graham*. Accordingly, consistent with *Graham*, we hold that defendant is entitled to a new trial on the charge of first degree rape by acting in concert with someone else.

STATE v. PERSON

[187 N.C. App. 512 (2007)]

III

**[4]** Defendant further contends that the trial court erred in its instructions by failing to instruct the jury regarding "attempt" in connection with the charge of first degree sexual offense by anal intercourse. Specifically, defendant argues that an instruction on attempted first degree sexual offense was required because there was conflicting evidence on the crucial element of anal penetration, and, as a result, the jury could have found him guilty of the attempted offense although acquitting him of the completed offense. Defendant acknowledges that his trial counsel failed to request such an instruction, but argues on appeal that the trial court committed plain error. Our review of this question is, therefore, limited to a plain error analysis. *See* N.C.R. App. P. 10(c)(4).

"A trial court must submit a lesser included offense instruction if the evidence would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater." *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986), *superseded by statute on other grounds as stated by State v. Moore*, 335 N.C. 567, 440 S.E.2d 797, *cert. denied*, 513 U.S. 898, 130 L. Ed. 2d 174, 115 S. Ct. 253 (1994). If the State, as in this case, seeks to convict a defendant of only the greater offense of first degree sexual offense, "the trial court needs to present an instruction on the lesser included offense [of attempted first degree sexual offense] only when the 'defendant presents evidence thereof or when the State's evidence is conflicting.' " *State v. Woody*, 124 N.C. App. 296, 307, 477 S.E.2d 462, 467 (1996) (quoting *State v. Ward*, 118 N.C. App. 389, 398, 455 S.E.2d 666, 671 (1995)); *see also Johnson*, 317 N.C. at 436, 347 S.E.2d at 18 ("Instructions pertaining to attempted first degree rape as a lesser included offense of first degree rape are warranted when the evidence pertaining to the crucial element of penetration conflicts or when, from the evidence presented, the jury may draw conflicting inferences.").

Defendant relies principally on the victim's direct-examination testimony to argue that an attempt instruction was warranted. As reflected in the transcript, her testimony regarding the anal intercourse offense was brief and somewhat ambiguous:

Q And you say he stuck his penis in your private. Do you mean vagina when you say private?

A Yes.

Q And then what happened?

A  He lasted a short time, and then he told me to turn around. *He tried to put his penis into my rectum, but he didn't try. He didn't last very long.*

Q  And then what happened?

A  They left me there . . . .

(Emphasis added.) Based on this testimony, defendant argues the jury would likely have acquitted him of the greater offense requiring completion of the act of anal intercourse and convicted him of only attempted anal intercourse had the jury been given an "attempt" instruction. The victim's testimony does not, however, necessarily mean that the State's evidence of penetration was conflicting.

In *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985) (emphasis omitted), the defendant argued that his statement to police that he merely "struggled to penetrate without an erection" cast doubt on whether the act ever occurred. The Supreme Court observed, however, that "[t]he simple fact that a person struggles to accomplish some feat, taken by itself, implies neither success nor failure. The fact that defendant 'struggled to penetrate' is far from equivocal and in no way negates a completed act." *Id.* at 352, 333 S.E.2d at 718. The Court concluded that the victim's unequivocal testimony that the defendant completed the act, in conjunction with the fact that the defendant's testimony did not actually deny penetration, "compelled the instruction given by the trial court," which did not include an attempt instruction. *Id.*

Defendant argues, however, that the evidence here was similar to that in *Johnson*, in which the Supreme Court held the "evidence create[d] a conflict as to whether penetration occurred," and, thus, the trial court "committed reversible error by failing to instruct the jury on the lesser included offense of attempted first degree rape." 317 N.C. at 436, 347 S.E.2d at 18. In *Johnson*, although the victim testified on direct examination that the defendant had penetrated her vagina, she admitted on cross-examination to giving a statement to the police that "the man 'tried to push it in but couldn't.' " *Id.* A doctor further testified that when he examined the victim, he found her to have an unusually narrow vagina and that the victim had told him that she had " 'felt pressure but not penetration.' " *Id.*

We believe this case is controlled by *Williams* rather than *Johnson*. Carla's testimony paralleled that of the defendant in *Williams*, with her testimony indicating only that defendant struggled

in engaging in anal intercourse; she never specifically excluded penetration. In addition to this testimony, the State presented DNA evidence that defendant's sperm was found on the anal swab collected from Carla following the attack—unequivocal evidence of penetration equivalent to the victim's testimony in *Williams*.[2] Given the DNA evidence in combination with Carla's testimony, we hold that *Williams* establishes that the trial court did not err in failing to instruct the jury regarding "attempt." *See also State v. Rhinehart*, 322 N.C. 53, 58-60, 366 S.E.2d 429, 432-33 (1988) (trial court did not err in refusing to give attempt instruction because victim's statements that defendant "tried to suck" victim's penis provided no basis "from which the jury could reasonably have found that defendant committed merely the lesser included offense of attempted first-degree sexual offense," especially when victim's "emotional statements in the minutes following the incident that defendant had 'tried to suck' his penis pale in significance" to other strong evidence of completed act).

[5] In a separate assignment of error, defendant also argues that he was denied effective assistance of counsel insofar as his trial counsel failed to request that the jury be instructed on the offense of attempted first degree sexual offense. To establish a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) his defense was prejudiced by counsel's deficient performance. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). Our conclusion that the trial court was not required to provide an instruction on the attempted crime—even if it had been requested to do so—necessarily establishes that defendant was not denied effective assistance of counsel.

## IV

[6] Defendant next argues that the trial court "erred or committed plain error" when, during sentencing, it improperly considered the fact that he refused a plea offer and chose instead to exercise his right to a jury trial. The parties dispute whether defendant preserved this argument for appellate review. Although our appellate rules generally require a party to "present[] to the trial court a timely request, objection or motion," N.C.R. App. P. 10(b)(1), in order to preserve an issue for appeal, the Supreme Court has held that this rule "does not

---

2. In defendant's own testimony at trial, he did not deny having anal intercourse with the victim. Defendant merely testified that he did not remember if he did or not. When asked "how [his] semen got on her vagina or her anus," defendant stated: "Probably cause I had sex with her. I can't remember if it was, so I was probably intoxicated, and can't remember."

have any application" when a defendant seeks to challenge the finding of an aggravating factor at his sentencing, even though he did not overtly object when the finding was made. *State v. Canady*, 330 N.C. 398, 401, 410 S.E.2d 875, 878 (1991). This Court has subsequently relied on *Canady* for the proposition that "an error at sentencing is not considered an error at trial for the purpose of . . . Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure." *State v. Hargett*, 157 N.C. App. 90, 92, 577 S.E.2d 703, 705 (2003). *Accord State v. McQueen*, 181 N.C. App. 417, 420-21, 639 S.E.2d 131, 133, *appeal dismissed and disc. review denied*, 361 N.C. 365, 646 S.E.2d 535 (2007); *State v. Curmon*, 171 N.C. App. 697, 703, 615 S.E.2d 417, 422 (2005). Accordingly, defendant's contentions regarding sentencing are properly before the Court.

Even though "[a] sentence within the statutory limit will be presumed regular and valid[,] . . . such a presumption is not conclusive." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights." *Id.* Our Supreme Court has further stated: "Where it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result." *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990).

Here, defendant relies on references of the trial judge to the fact that defendant rejected an offer by the State to grant concessions on charges or sentencing if defendant would testify against Johnson. Defendant's argument, however, fails to take into account the context in which the trial judge made his remarks, including the fact that the trial judge was responding to statements made by defendant.

Before imposition of sentence, defendant accepted the judge's invitation to address the court personally and stated:

Concerning the prior convictions of my life, I was young and misguided, without a father in the home. Played a big influence in my mother.

Me and my mother and three kids, and I was just led by the wrong crowd.

**STATE v. PERSON**

[187 N.C. App. 512 (2007)]

I was young when I had responsibility in crime, and I deeply regret it. That's in the past. I can't dwell on the past. I just want to go forward.

But prior to this situation, on the situation with the victim, sorry that it happened to her, and wish I wouldn't have been involved in the way I was involved in it.

I just hurt my [sic] so bad, that I feel like I was robbed out of a decent life. Forgive me, Your Honor.

. . . .

. . . I apologize for taking up your time, the time of the jurors and everybody's time. What's done, I can't go back to the past.

. . . .

I just wish that, you know, I had another opportunity to prove myself that I was a honorable law abiding, caring, loving man [and] citizen, but you know, there's hope. Look hopful [sic] to the bright future; that's all. . . .

. . . .

I wish that I would have been perceived as a man of who I am in my heart rather than a piece of paper.

I hate being judged by paper, cause I know who I am. I'm not a criminal, definitely not a rapist.

Immediately following defendant's statement, the trial judge responded:

THE COURT: Thank you, sir. My recollection is from [sic].

My pretrial conference [sic] that the Defendant was afforded an opportunity, even as late as last week if I'm not mistaken, to testify against Nicholas Johnson, and receive in [sic] concession on the charges and/or sentences, is that correct?

[PROSECUTOR]: That's correct, Your Honor, he was.

THE COURT: He chose to reject that offer, which was made even as late as last week.

The crimes for which this Defendant had been convicted are violent, and are serious.

I think I'll reserve further comment. The evidence is all of record in this case.

Stand up please, Mr. Person.

Following these remarks, the trial court went on to pronounce the individual sentences.

Given this context, we do not believe that it can be reasonably inferred that the judge improperly considered defendant's election to go to trial in sentencing defendant. Our review of the above remarks indicates that the judge was commenting instead on defendant's lack of credibility when claiming he wanted "another opportunity to prove" himself as an "honorable law abiding, caring, loving man [and] citizen" and that he had been misled by "the wrong crowd." The judge's remarks point out that defendant was given precisely the opportunity he supposedly desired when the State offered to agree to certain concessions in exchange for his testimony against Nicholas Johnson. The trial judge could reasonably determine—as his comments indicate he did—that the sincerity of defendant's statements was in serious doubt given his refusal to testify against someone who was part of "the wrong crowd."

In short, based on the record, we hold that defendant was not more seriously punished as a result of his exercise of his constitutional right to trial by jury. *See State v. Gantt,* 161 N.C. App. 265, 272, 588 S.E.2d 893, 898 (2003) ("Although we disapprove of the trial court's reference to defendant's failure to enter a plea agreement, 'we cannot, under the facts of this case, say that defendant was prejudiced or that defendant was more severely punished because he exercised his constitutional right to trial by jury.' " (quoting *State v. Bright,* 301 N.C. 243, 262, 271 S.E.2d 368, 380 (1980)), *disc. review denied,* 358 N.C. 157, 593 S.E.2d 83 (2004). This assignment of error is overruled.

## V

**[7]** Finally, we turn to defendant's argument that the trial court committed error in ordering restitution to the victim in the amount of $2,300.52. Even though defendant did not voice an objection to restitution at sentencing, this assignment of error is fully reviewable on appeal. *See State v. Shelton,* 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) ("While defendant did not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18).").

N.C. Gen. Stat. § 15A-1340.36 (2005) provides in relevant part:

(a) In determining the amount of restitution to be made, the court shall take into consideration the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact or conclusions of law on these matters. The amount of restitution must be limited to that supported by the record, and the court may order partial restitution when it appears that the damage or loss caused by the offense is greater than that which the defendant is able to pay. If the court orders partial restitution, the court shall state on the record the reasons for such an order.

Defendant contends that the trial court violated this statute by failing to consider any of the factors relating to defendant's ability to pay the restitution amount.

During the hearing on sentencing, the prosecutor requested restitution in the amount of $2,300.52 in order to compensate the victim for her medical expenses related to the attack and presented the court with a copy of the victim's medical bills. After setting out the terms of imprisonment, the trial court then stated that it was "imposing a civil judgment or lien against the Defendant in the amount of $2,300.52 in favor of [the victim] by reason of restitution." The court later indicated that liability for the restitution was joint and several with Nicholas Johnson. On the judgment for first degree rape, 05 CRS 227174, and only that judgment, the court indicated that restitution was awarded in the amount of $2,300.52 and a civil lien imposed with joint and several liability with the co-defendant. The court also recommended payment of restitution as a condition of post-release supervision, if applicable, or from work release earnings, if applicable.

Because defendant was convicted of a B1 felony, the victim had "the right to receive restitution as ordered by the court . . . ." N.C. Gen. Stat. § 15A-834(b) (2005). Under N.C. Gen. Stat. § 15A-1340.34 (2005), the court was, therefore, required to order "that the defendant make restitution to the victim . . . for any injuries or damages arising directly and proximately out of the offense committed by the defendant." The court's order of restitution to reimburse the victim for her medical expenses resulting from the rape complied with this statute.

While the court was also required by N.C. Gen. Stat. § 15A-1340.36(a) to consider various factors regarding defendant's ability to pay in determining the precise amount of the restitution, the statute also specifically provides that "the court is not required to make findings of fact or conclusions of law on these matters." Defendant, however, cites to *State v. Mucci*, 163 N.C. App. 615, 626, 594 S.E.2d 411, 419 (2004), in which this Court held: "Although the statute expressly does not require the trial court to make findings of fact or conclusions of law on the factors, the record in this case reveals that the trial court did not consider any of the factors related to defendant's ability to pay the full amount of restitution and thus this case must be remanded for a new sentencing hearing."

A key factor in *Mucci*, however, as with the cases upon which it relied, was the large amount of restitution and the fact that common sense dictated that the defendant could not pay the amount ordered. In *Mucci*, the court conditioned probation on the defendant's paying "full restitution of over $26,000.00 in addition to performing twenty-five hours per week of community service for the entire probationary period [of 36 months], for a total of 3,600 hours, while remaining gainfully employed and paying $4,000.00 in fines plus $500.00 in costs . . . ." *Id.* at 627, 594 S.E.2d at 419. *Mucci* relied upon *State v. Smith*, 90 N.C. App. 161, 368 S.E.2d 33 (1988), *aff'd per curiam*, 323 N.C. 703, 374 S.E.2d 866, *cert. denied*, 490 U.S. 1100, 104 L. Ed. 2d 1007, 109 S. Ct. 2453 (1989), and *State v. Hayes*, 113 N.C. App. 172, 437 S.E.2d 717 (1993). In *Smith*, the trial court conditioned the defendant's probation on payment of $500,000.00, with the result that the defendant would have to pay a minimum of $62,500.00 per year (if her probation were extended). 90 N.C. App. at 168, 368 S.E.2d at 38. This Court observed: "Common sense dictates that only a person of substantial means could comply with such a requirement." *Id.* Likewise, in *Hayes*, when the trial court ordered restitution in the amount of $208,899.00, payable over a five-year probationary period, this Court concluded: "As in *Smith*, common sense dictates that this defendant will be unable to pay this amount." 113 N.C. App. at 175, 437 S.E.2d at 719.

In *Smith*, this Court distinguished our Supreme Court's decision in *State v. Hunter*, 315 N.C. 371, 338 S.E.2d 99 (1986), "in which the Court upheld a restitution order under similar circumstances" to those of *Smith*. *Smith*, 90 N.C. App. at 168, 368 S.E.2d at 38. The Court pointed out that "[i]n *Hunter*, however, the amount of restitution was only $919.25." *Id.*

We believe this case falls within the scope of *Hunter. See Hunter,* 315 N.C. at 376, 338 S.E.2d at 103 (upholding restitution award of $919.25 when trial judge "knew defendant's age, her relationship to the victim, that she resided with her mother, that she was indigent for legal purposes, and that the victim's family had insurance of an uncertain amount," even though court did not expressly refer to defendant's ability to pay). The restitution is only $2,300.52, and the record contains no expressed mandatory time limitation for its payment. In contrast to *Mucci, Hayes,* and *Smith,* this relatively modest amount of restitution and the terms of its payment are not such as to lead to a "common sense" conclusion that the trial court did not consider defendant's ability to pay. Indeed, defendant did not suggest below that he lacked the ability to pay this amount. *See State v. Riley,* 167 N.C. App. 346, 349, 605 S.E.2d 212, 215 (2004) ("Because [the defendant] failed to present evidence showing that she would not be able to make the required restitution payments, we find no error."). Defendant has cited no decision in which a North Carolina appellate court has reversed such a moderate award of restitution for failure to consider the defendant's ability to pay. Under the circumstances presented to us, we decline to do so in this case.

## Conclusion

In summary, we remand to the trial court for entry of judgment on second degree rape (as a principal) and second degree sexual offense based on anal intercourse. The trial court must conduct a new sentencing hearing with respect to those two offenses. As for the charge of first degree rape by acting in concert with someone else, we hold that defendant is entitled to a new trial. We find no error regarding defendant's remaining convictions and sentences.

Remanded in part; new trial in part; no error in part.

Judge CALABRIA concurs.

Judge JACKSON concurs in part, concurs in the result only in part and dissents in part in a separate agreement.

JACKSON, Judge, concurring in part, concurring in result only in part and dissenting in part.

I concur with sections I, III, and IV of the majority's opinion, and concur only in the result of section V. However, for the reasons stated

below, I must respectfully dissent from Part II of the majority's opinion which concludes that defendant is entitled to a new trial on the charge of first degree rape by acting in concert with someone else. I would hold no plain error.

Although I agree that the majority's reliance on *State v. Graham*, 145 N.C. App. 483, 487, 549 S.E.2d 908, 911 (2001), is appropriate inasmuch as it holds that the pattern jury instruction on acting in concert leaves open the possibility that defendant is being convicted twice for the same conduct, I disagree with the majority's contention that because *Graham* labeled this error "fundamental," whether or not the error is harmless is immaterial.

The North Carolina Supreme Court adopted the plain error rule in *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983), stating that

> the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) (footnotes omitted) (emphasis in original)). *Odom* continued, "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79 (citing *United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L. Ed. 2d 1137 (1978)). That is, "[b]efore deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citing *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79).

Merely labeling an error as "fundamental" does not relieve this Court of the obligation to review the error for harmlessness. The United States Supreme Court has applied harmless error analysis to a myraid of constitutional errors affecting "fundamental" rights. *See Arizona v. Fulminante*, 499 U.S. 279, 306, 113 L. Ed. 2d 302, 329 (1991). In *Fulminante*, the Supreme Court listed the following exemplary cases:

> *Clemons v. Mississippi*, 494 U.S. 738, 752-754 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Satterwhite v. Texas*, 486 U.S. 249 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); *Carella v. California*, 491 U.S. 263, 266 (1989) (jury instruction containing an erroneous conclusive presumption); *Pope v. Illinois*, 481 U.S. 497, 501-504 (1987) (jury instruction misstating an element of the offense); *Rose v. Clark*, 478 U.S. 570 (1986) (jury instruction containing an erroneous rebuttable presumption); *Crane v. Kentucky*, 476 U.S. 683, 691 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession); *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) (restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause); *Rushen v. Spain*, 464 U.S. 114, 117-118, and n. 2 (1983) (denial of a defendant's right to be present at trial); *United States v. Hasting*, 461 U.S. 499 (1983) (improper comment on defendant's silence at trial, in violation of the Fifth Amendment Self-Incrimination Clause); *Hopper v. Evans*, 456 U.S. 605 (1982) (statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause); *Kentucky v. Whorton*, 441 U.S. 786 (1979) (failure to instruct the jury on the presumption of innocence); *Moore v. Illinois*, 434 U.S. 220, 232 (1977) (admission of identification evidence in violation of the Sixth Amendment Confrontation Clause); *Brown v. United States*, 411 U.S. 223, 231-232 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Confrontation Clause); *Milton v. Wainwright*, 407 U.S. 371 (1972) (confession obtained in violation of *Massiah v. United States*, 377 U.S. 201 (1964)); *Chambers v. Maroney*, 399 U.S. 42, 52-53 (1970) (admission of evidence obtained in violation of the Fourth Amendment); *Coleman v. Alabama*, 399 U.S. 1, 10-11 (1970) (denial of counsel

at a preliminary hearing in violation of the Sixth Amendment Counsel Clause).

*Id.* at 306-07, 113 L. Ed. 2d at 329-30 (parallel citations omitted). We need only look to this State's recent examination of sentencing errors in violation of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), to realize that harmless error may be applied in this case. *See State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied*, 550 U.S. 948, 167 L. Ed. 2d 1114 (2007) (holding the trial court's, rather than the jury's, finding of an aggravating factor was harmless beyond a reasonable doubt).

North Carolina appellate courts have denied harmless error review when the errors were deemed "structural," *i.e.*, resulting from a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310, 113 L. Ed. 2d at 331.

The majority contends correctly that we are bound by North Carolina Supreme Court precedent establishing a bifurcated standard for plain error analysis. However, this bifurcated standard does not foreclose a determination of whether the error impacted the jury's verdict in this case. As recently as 15 December 2006, our Supreme Court stated the following:

> We find plain error "only in exceptional cases where, 'after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' *Thus, the appellate court must study the whole record to determine if the error had such an impact on the guilt determination, therefore constituting plain error." Accordingly, we must determine whether the jury would probably have reached a different verdict if [the error] had not [occurred].*

*State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (citations omitted) (emphasis added). Clearly, our precedents mandate review of the entire record in our determination as to whether there is a fundamental error that requires reversal for plain error.

Had *Graham* labeled the use of the unaltered pattern jury instruction for acting in concert which exposed the defendant to the possibility of being twice convicted for the same conduct a structural error, I would agree that a harmless error analysis is irrelevant; how-

ever, this "fundamental" error is not "structural." Therefore, I would apply harmless error analysis in this case.

Further, *Graham* held, "*In this case,* . . . fundamental error occurred." *Graham*, 145 N.C. App. at 487, 549 S.E.2d at 911 (emphasis added). I believe this holding was limited to the facts of *Graham*. In *Graham*, the State argued only that using pattern jury instructions to instruct the jury does not constitute plain error. The State did not argue that any error was harmless; therefore, this Court did not apply a harmless error analysis.

In the case *sub judice*, the court went to great lengths to make clear that one charge was for defendant's own conduct, while the other was for acting in concert with Johnson. Although the evidence supported an acting in concert instruction with respect to defendant's individual activity towards the victim, the trial judge elected not to give the instruction for the charge alleging defendant's own conduct. The court proposed that the verdict sheet for first degree rape by acting in concert read "guilty of first degree rape by acting in concert with someone else." After giving general jury instructions, the court went through each jury sheet, pointing out that there were two counts of first degree rape. "The second charge is file number 05-CRS-227172, it reads differently from the one I just read to you." The court explained that the first verdict sheet "simply says guilty of first degree rape or not guilty," while the second says, "guilty of first degree rape by acting in concert with someone else." The court pointed out that "each legal instruction I give you relates only to that particular charge." The court prefaced its instructions on the second rape charge—alleging acting in concert—"I'm going to give you the law, and it's a little different." The court then instructed the jury on first degree rape and acting in concert.

Notwithstanding the court's erroneous instruction, as the State correctly argues, there was overwhelming evidence of defendant's guilt as to both charges. The victim testified that defendant watched while Johnson raped her and that defendant also raped her. Defendant gave a taped confession in which he admitted that he watched Johnson rape and sexually assault the victim, then took Johnson up on his invitation to rape her himself. Defendant admitted that they both had intercourse with her against her will, and that she was in the same position when Johnson raped her as when he raped her. At trial, defendant testified that he remembered seeing Johnson have sex with her from behind. He testified that after Johnson had

**IN RE M.G., M.B., K.R., J.R.**

[187 N.C. App. 536 (2007)]

sex with her, he "took [his] turn." There was DNA evidence that defendant's semen was found on swabs taken from both the victim's vagina and anus, which defendant testified was there "probably cause I had sex with her."

Given the evidence in this case, I would hold the erroneous jury instruction was harmless beyond a reasonable doubt and that the trial court's use of the unmodified pattern jury instruction did not constitute plain error.